LILLIAN A. WELSH vs. JAMES H. MORSE
(and a companion case [1]).

Middlesex.    November 8, 1945. — February 4, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Negligence,* Taxicab, Motor vehicle, Contributory.

A finding of negligence on the part of the operator of a taxicab was war-
ranted, and a finding of contributory negligence on the part of a woman
passenger therein was not required as matter of law, by evidence of
the circumstances in which she jumped from the moving taxicab and
was injured when, without explanation, the operator turned into a
dimly lighted side street on a dark, misty night and proceeded thereon
notwithstanding that she told him it was the wrong street and twice
requested him to let her get out and that he knew she had become
frightened and was preparing to jump out unless he stopped.

TWO ACTIONS OF TORT. Writs in the Third District
Court of Eastern Middlesex dated December 31, 1942.

Upon removal to the Superior Court, the actions were
tried before *Dowd,* J.

*D. H. Fulton,* for the defendants.

*S. L. Kaplan,* for the plaintiff.

RONAN, J.   The plaintiff, at about nine o'clock on the
evening of May 7, 1942, entered and sat in the rear seat of
an automobile owned by the defendant Morse, which was
parked at a taxi stand in Cushing Square in Belmont, after
the operator, the defendant Rowe, who was seated back of
the wheel, had opened the door for her to enter. She di-
rected him to drive her to 78 Long Avenue, where she re-
sided. The telephone at the taxi stand rang and Rowe left
the automobile to answer it. He then returned to the auto-
mobile, and the plaintiff again told where she wished to go.
She lived only about seven tenths of a mile away. Rowe
proceeded along Common Street. Long Avenue intersects
Common Street on the right and is beyond the junction of

---

[1] The companion case is by the same plaintiff against Walter A. Rowe.

Horace Road and Common Street.  Horace Road intersects
Common Street on the left.  The night was dark with a
very heavy mist.  The street lights were dimmed in accord-
ance with black-out regulations.  Other than a few words
about rationing, there was no further conversation between
the plaintiff and Rowe until Rowe turned to his left as he
approached Horace Road.  The plaintiff immediately told
him that he was taking her down the wrong street and to
let her get out.  Rowe did nothing other than to smile and
stare at her.  She became frightened.  She said to him,
"I want to get out.  Let me get out."  After repeating these
words she stood up, put her hand on the door and said,
"I'm going to get out."  The operator did not say anything,
although he heard what she said and knew that she was
preparing to jump.  There was no checking of the speed of
the automobile, and the plaintiff jumped out and was in-
jured.  The automobile was travelling about twenty miles
an hour and had gone about one hundred twenty-five
feet from the time it started to turn to its left into Horace
Road to the time the plaintiff jumped.  We have now sum-
marized the facts which the jury could find from the evidence.
The jury returned a verdict for the plaintiff on the second
count in each declaration, which based a cause of action on
negligence.  The defendant in each case excepted to the
denial of his motion for a directed verdict on that count.
The plaintiff excepted to the direction of a verdict for the
defendant upon the first count of each declaration.

Rowe, who was admittedly the employee of the defendant
Morse, having undertaken for hire to convey the plaintiff,
was bound to use reasonable care to transport her safely to
her destination, and reasonable care in this respect has been
said to be the highest degree of care consistent with the
proper accomplishment of the business.  *Hinds* v. *Steere,* 209
Mass. 442.  *Guinevan* v. *Checker Taxi Co.* 289 Mass. 295.

The jury were not required to find that Rowe gave any
explanation to the plaintiff for turning off from Common
Street, and they could find that he knew that the plaintiff
had become frightened and was preparing to jump if he did
not stop the vehicle.  He testified that he knew that it was

his duty to stop when a passenger requested him to do so. There was nothing in the way of traffic or anything else that prevented him from stopping in accordance with her requests before she left the vehicle. The situation was entirely within his control. It could be found that he was negligent in not stopping; that in continuing along Horace Road, he was imposing an unreasonable risk of harm upon the plaintiff, *Hooper* v. *Bay State Street Railway*, 218 Mass. 251; *Stevens* v. *Reyn*, 220 Mass. 332; *Swistak* v. *Paradis*, 288 Mass. 377; *Galliher* v. *Stewart*, 310 Mass. 77; and that his negligence created an emergency which induced the plaintiff to jump from the moving vehicle. *Lund* v. *Tyngsboro*, 11 Cush. 563. *Sears* v. *Dennis*, 105 Mass. 310. *Flagg* v. *Hudson*, 142 Mass. 280. *Nute* v. *Boston & Maine Railroad*, 214 Mass. 184. *Fahy* v. *Director General of Railroads*, 235 Mass. 510. *Camp* v. *Rex Inc.* 304 Mass. 484. *Flaherty* v. *Collins*, 318 Mass. 153.

The defendants contend that the plaintiff had no reasonable cause for alarm and that she was guilty of contributory negligence. We are not prepared to say that the plaintiff ought not to have been frightened to the extent that the evidence indicates she was. According to her testimony, her demands to stop were unheeded; her threat to jump was disregarded; and she was ignorant of the purpose of the operator in turning off the main highway. Apparently, everything indicated to her that the operator, who was a stranger to her, intended to continue along this side street. His intent to continue despite her protests could be found only to have added to her bewilderment and fear and to have reasonably caused her to become apprehensive that her personal safety might be endangered unless she leaped from the automobile, which was the only avenue of escape available to her. The street was dark on account of the black-out regulations and the heavy mist. Whether she was negligent in jumping from the automobile is to be determined by the situation as it then appeared to her. If she acted suddenly in the face of what she mistakenly but reasonably regarded as an imminent and serious danger to her personal security, her conduct in attempting to avert this danger by leaving

the automobile cannot be said as matter of law to have been negligent.  *Barton* v. *Springfield,* 110 Mass. 131.  *Cody* v. *New York & New England Railroad,* 151 Mass. 462.  *Gannon* v. *New York, New Haven & Hartford Railroad,* 173 Mass. 40. *Lemay* v. *Springfield Street Railway,* 210 Mass. 63, 67. *McGinley* v. *Edison Electric Illuminating Co. of Boston,* 248 Mass. 583.  *Burnett* v. *Conner,* 299 Mass. 604.  *Flaherty* v. *Collins,* 318 Mass. 153.

> *Defendants' exceptions overruled.*
> *Plaintiff's exceptions dismissed.*